Filed 5/2/23 P. v. Fagundes CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Calaveras)

----

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | C093720 |
| v. | (Super. Ct. No. 19F7639) |
| DAVID JOSEPH FAGUNDES, | |
| Defendant and Appellant. | |

In a first trial, a jury found defendant David Joseph Fagundes guilty of making criminal threats and obstructing or resisting law enforcement personnel. In a second trial, a different jury convicted defendant of first degree murder and arson causing great bodily injury. That jury also found true allegations that the murder involved infliction of torture (hereafter the torture special circumstance) and that defendant personally used a deadly weapon in committing the murder. The trial court sentenced defendant to an indeterminate prison term of life without the possibility of parole, consecutive to a determinate term of four years.

1

Defendant now contends (1) there is insufficient evidence to support the torture special circumstance, (2) it was error to admit a video of defendant attacking another inmate and an exhibit showing defendant's prior conviction for first degree manslaughter, (3) the trial court should have instructed with CALCRIM No. 224 on the use of circumstantial evidence, (4) the trial court erred in concluding that his prior conviction was a strike, and (5) amendments to Penal Code section 1170[1] made by Senate Bill No. 567 (2021-2022 Reg. Sess.) require resentencing.

We conclude (1) substantial evidence supports the jury's finding that defendant acted with torturous intent, (2) to the extent defendant did not forfeit his evidentiary claims he has not established error, (3) although the trial court should have instructed with CALCRIM No. 224, the error was harmless, (4) we do not consider defendant's claim regarding a prior strike conviction because he was not sentenced on that basis, and (5) it is appropriate to remand for resentencing on the count II arson conviction, the count III criminal threats conviction, and the count IV obstruction conviction.

We will vacate defendant's sentence on counts II, III and IV and remand for resentencing on those counts consistent with current law. We will otherwise affirm the judgment.

BACKGROUND

The People charged defendant with murder (§ 187, subd. (a) – count I), arson causing great bodily injury (§ 451, subd. (a) – count II), making criminal threats (§ 422, subd. (a) – count III) and obstructing or resisting, by use of threat, force or violence, law enforcement personnel in the performance of their duty (§ 69 – count IV). At defendant's first trial, the jury found him guilty on counts III and IV but deadlocked on the other

---

[1] Undesignated statutory references are to the Penal Code.

counts. The People retried defendant on counts I and II. The following is a summary of the relevant facts from the evidence presented at the second trial.

Defendant arrived in Manteca, California on May 28, 2019, from Washington state. He told his cousin Christina M. someone posted their daughters' faces on pornography websites, people were harassing his daughters because of it, and he was in California to take care of it. Defendant said Christina M. knew the person responsible for the pornographic images.

When defendant could not reach his daughters, he put gasoline into a gas can and picked up his half-sister Toni Jilbert from work. Jilbert's husband last heard from her at 3:30 a.m.

Someone working with cattle near Highway 4 in or near Copperopolis in Calaveras County saw a car engulfed in fire at about 6:00 or 6:30 a.m. on May 29, 2019. The car was registered to defendant.

Jilbert's body was behind the driver's seat of the car. Her face and body were charred beyond recognition. There was a stab wound to Jilbert's chest that penetrated her lung. There were two stab wounds to her abdomen. One went into the stomach; the other went into the area of her kidney. There was a lot of soot in her airway and the carbon monoxide level in her body was elevated, indicating she was alive at the time of the fire. The pathologist opined that Jilbert was stabbed before the fire and she was alive for a few minutes after she was stabbed. According to the pathologist, someone looking at Jilbert before the fire would have seen that she was alive. The cause of death was a combination of smoke inhalation and thermal burns. The stab wounds were not fatal but contributed to Jilbert's death.

A fixed blade knife was found in the car. The knife belonged to defendant. A rectangular, reddish-colored plastic object with a very strong odor of gasoline was recovered from the rear portion of the car. Gasoline was present in foam cushions in the car. And there was an indication of gasoline on fibers collected at Jilbert's autopsy.

3

Law enforcement officers contacted defendant around 5:30 p.m. that day as he stood in grass a short distance from the crime scene. Indicating they were with the Sheriff's Department, officers directed defendant to show them his hands. Defendant refused, saying, "You're going to have to shoot me." Officers continued to direct defendant to show them his hands, but defendant sat down in the grass and concealed his left hand. He said, "You draw, I draw" and that it would "end in bullets." He told officers he had a gun. When asked if he was with anyone, defendant said he was with his sister. He blamed officers for leaving him out there all day and said he heard the officers talking and they were concealing evidence. Officers repeatedly ordered defendant to show his hands but defendant refused to comply. He was taken into custody about an hour and a half after the confrontation began. He had a fairly deep puncture wound on the right side of his neck, and he had a knife sheath and a closed folding knife. No firearm was found.

Defendant later admitted he drove his sister to Calaveras County. The fixed-blade knife in the burned car could fit in defendant's knife sheath. A mixture of DNA was found on the sheath. Defendant was a major contributor of the DNA mixture, but a minor partial DNA profile from the mixture was consistent with Jilbert's profile. A California Department of Forestry and Fire Protection investigator determined the car fire started on the driver's side of the car, between the front and rear seats. The investigator opined that the fire was intentionally set.

Unlike with the first trial, defendant testified at the second trial. Among other things, he said someone sent him a pornographic video as he was driving to California. He did not know who sent it. The girl in the video looked like Christina M.'s daughter. After arriving in California, he dropped Jilbert off at her work and offered to pick her up so they could use methamphetamine together. He bought $5 worth of gasoline and put it in a can because the gasoline gauge in his car did not work and he always kept a reserve of gasoline when he travelled. He left his uncle's house about 11:30 p.m. to pick up

4

Jilbert from work. He and Jilbert drove to Stockton to get methamphetamine. Jilbert drove and defendant fell asleep, but he awoke when someone named Jesse entered the car. Jilbert was not in the car. Jesse said Jilbert wanted them to pick her up at her dealer's. Defendant followed Jesse's directions and drove into the country. Another car followed them. It was about 5:00 or 5:30 a.m. Defendant thought he was being carjacked when Jesse put a pistol to his side. He ran his car off the road. Defendant ran away, fell and blacked out. When he woke up he could not remember what happened. He did not remember the confrontation with law enforcement officers. Defendant denied killing Jilbert.

The jury found defendant guilty of murder in the first degree (§ 187, subd. (a) – count I) and arson that caused great bodily injury (§ 451, subd. (a) – count II). It found true the torture special circumstance allegation (§ 190.2, subd. (a)(18)) and the allegation that defendant personally used a deadly weapon in committing the murder (§ 12022, subd. (b)(1)). The trial court sentenced defendant to an indeterminate prison term of life without the possibility of parole, consecutive to a determinate term of four years.

Additional facts are included in the discussion as relevant to the contentions on appeal.

## DISCUSSION

### I

Defendant contends the true finding on the torture-special-circumstance allegation must be reversed because there was insufficient evidence that he intended to cause Jilbert extreme pain or suffering.

In determining whether sufficient evidence supports a conviction, " 'we do not determine the facts ourselves. Rather, we "examine the whole record in the light most favorable to the judgment to determine whether it discloses substantial evidence -- evidence that is reasonable, credible and of solid value -- such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt."

5

[Citations.] We presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence. [Citation.]' " (*People v. Nelson* (2011) 51 Cal.4th 198, 210.) And " '[w]e "must accept logical inferences that the jury might have drawn from the circumstantial evidence." ' " (*People v. Manibusan* (2013) 58 Cal.4th 40, 87.) We do not reweigh evidence or reevaluate witness credibility. (*People v. Lindberg* (2008) 45 Cal.4th 1, 27.) The effect of this standard of review is that a defendant challenging the sufficiency of the evidence to support a conviction bears a heavy burden on appeal. (*People v. Powell* (2011) 194 Cal.App.4th 1268, 1287.)

The People alleged in count I that the murder of Jilbert involved the infliction of torture within the meaning of section 190.2, subdivision (a)(18). To prove that allegation, the People had to prove that defendant intended to " ' "cause extreme pain or suffering for the purpose of revenge, extortion, persuasion, or another sadistic purpose." ' " (*People v. Powell* (2018) 5 Cal.5th 921, 944-945 (*Powell*).) Torturous intent may be proved by the nature of the killing, the nature and severity of the victim's wounds, and statements by defendant revealing his state of mind at the time of the crime. (*Id.* at p. 945; *People v. Brooks* (2017) 3 Cal.5th 1, 65-67 (*Brooks*).) The People need not establish that the victim was conscious and suffered pain. (*Powell,* at p. 945; *Brooks,* at p. 67.) Instead, "[t]he focus . . . is on defendant's intent to inflict pain and suffering, which is 'at the heart of' torture murder." (*Powell,* at p. 945, italics omitted.)

A motive for killing may support a finding of torturous intent. (*Powell, supra*, 5 Cal.5th at p. 945-946 [sexual obsession]; *Brooks, supra*, 3 Cal.5th at pp. 17, 59-60, 66-67 [sexual jealousy, anger and revenge]; *People v. D'Arcy* (2010) 48 Cal.4th 257, 294 [anger and revenge].) The prosecutor argued to the jury that defendant was obsessed with someone posting what he believed were pornographic images of his niece and daughters, he made sure Jilbert would be in Manteca when he arrived, and he came to

California because of Jilbert.[2]  Christina M. testified that defendant was very upset about someone putting their daughters' faces on pornographic websites, and defendant said he intended to take care of the person responsible for it when he came to California. Defendant discussed his concern with Christina M. immediately upon seeing her and talked about the matter for 20 or 30 minutes.  In response to a question by a law enforcement officer about why he was so hostile, defendant said he "watched it on porn hub."  Defendant let Jilbert and his uncle know that he wanted to see Jilbert when he was in Manteca.  He drove Jilbert to Calaveras County, where authorities found his car on fire.  Jilbert was dead inside the car hours after defendant put gasoline in a gas can and picked up Jilbert.  The jury rejected defendant's testimony about a third-party perpetrator.

The nature of Jilbert's injuries also indicates an intent to cause pain and suffering. There is evidence defendant doused Jilbert with gasoline and set her on fire after inflicting three painful but nonfatal stab wounds. (*Brooks, supra*, 3 Cal.5th at pp. 66 [" 'fire has historically been used as an instrument of torture and is generally known to cause extreme pain.' "]; *People v. Streeter* (2012) 54 Cal.4th 205, 245; *People v. Martinez* (1952) 38 Cal.2d 556, 561.)

There is substantial evidence from which the jury could find that defendant acted with torturous intent, supporting the true finding on the torture-special-circumstance allegation.

---

[2] On appeal, the Attorney General argues that there was evidence defendant stabbed Jilbert after she stabbed him and defendant set his car on fire as a result of methamphetamine-induced panic.  The portion of the reporter's transcript the Attorney General cites does not support that assertion.  Further, the prosecutor did not present a methamphetamine-induced killing theory at trial.

7

II

Defendant next argues the trial court erroneously admitted a video of defendant attacking another inmate (exhibit 81) and an exhibit showing his prior conviction for first degree manslaughter (exhibit 69).

A trial court enjoys broad discretion in the admission of evidence. (*People v. Fayed* (2020) 9 Cal.5th 147, 189.) We review its ruling to admit evidence for abuse of discretion and do not disturb its exercise of discretion except upon a showing that it exercised its discretion in an arbitrary, capricious or patently absurd manner that resulted in a manifest miscarriage of justice. (*People v. Brown* (2003) 31 Cal.4th 518, 534.)

A

Regarding the video of defendant attacking another inmate (exhibit 81), defendant claims evidence of his character for violence was not admissible under Evidence Code section 1102. But defendant did not assert Evidence Code section 1102 in the trial court and this specific appellate claim has not been preserved for review. (*People v. Doolin* (2009) 45 Cal.4th 390, 437 (*Doolin*).)

Defendant further claims his trial testimony did not open the door to admission of the video. But because defendant testified on direct examination that he could not remember the standoff with law enforcement officers, the prosecutor was entitled to probe that testimony. (*People v. Hawthorne* (2009) 46 Cal.4th 67, 100 (*Hawthorne*), disapproved on another ground in *People v. McKinnon* (2011) 52 Cal.4th 610, 637-638; *People v. Dykes* (2009) 46 Cal.4th 731, 764-766.) When questioned about whether he threatened a lieutenant during the standoff, defendant volunteered that it was not in his character to be violent and hostile. He added that he had never been violent unless he was backed into a corner. When asked whether he knew a Ronnie Young, defendant said Young provoked defendant to fight when the two were in jail. Defendant testified he and Young were in a corner and Young "got in [defendant's] face" and made a "threatening

8

gesture that he was going to take off." Defendant said he hit Young after Young started fighting with him.

Based on defendant's testimony, it was proper to allow the prosecutor to introduce evidence to refute it. (*Hawthorne, supra*, 46 Cal.4th at p. 100; *Andrews* v. *City and County of San Francisco* (1988) 205 Cal.App.3d 938, 945-947.) " '[B]y taking the stand, defendant put his own credibility in issue and was subject to impeachment in the same manner as any other witness.' " (*Doolin, supra*, 45 Cal.4th at p. 438; see Evid. Code, § 780, subd. (i); *Hawthorne,* at p. 99; *People v. Lavergne* (1971) 4 Cal.3d 735, 742 (*Lavergne*).) Exhibit 81 does not show defendant and Young in a corner when the fight started. It does not show Young make any gesture indicating he was about to strike defendant before defendant started hitting Young. Defendant hit Young repeatedly with his fists. Young did not hit defendant.

There was also no abuse of discretion under Evidence Code section 352. (*Doolin, supra*, 45 Cal.4th at p. 437.) The trial court may exclude evidence if its probative value is substantially outweighed by the probability that its admission will necessitate undue consumption of time or create a substantial danger of undue prejudice, confusing the issues or misleading the jury. (Evid. Code, § 352.) Evidence relating to a witness's credibility is relevant evidence. (*Lavergne, supra*, 4 Cal.3d at p. 742.) " '[E]vidence should be excluded as unduly prejudicial when it is of such nature as to inflame the emotions of the jury, motivating them to use the information, not to logically evaluate the point upon which it is relevant, but to reward or punish one side because of the jurors' emotional reaction. In such a circumstance, the evidence is unduly prejudicial because of the substantial likelihood the jury will use it for an illegitimate purpose.' " (*Doolin,* at p. 439.)

Defendant was the only eyewitness to the murder presented at trial, and his credibility was an important part of the proceeding. Exhibit 81 was directly relevant to his truthfulness and credibility in that it contradicted the veracity of his testimony about

his altercation with Young. Defendant fails to demonstrate that introduction of exhibit 81 necessitated undue consumption of time or created a substantial danger of confusing the issues or misleading the jury. Evidence of defendant's attack on Young was not more inflammatory than evidence of the stabbing and burning of Jilbert while she was still alive.

B

Exhibit 69 showed defendant's prior Washington state conviction for first degree manslaughter. It was admitted as relevance to defendant's credibility and not for propensity. Defendant claims the exhibit does not contradict his testimony that he is nonviolent because the Washington conviction did not establish that the prior death occurred by violence.

The contention is forfeited because defendant did not object on the same grounds in the trial court. (*People v. Peoples* (2016) 62 Cal.4th 718, 754; *People v. Seumanu* (2015) 61 Cal.4th 1293, 1328, fn. 7.) In any event, a crime involving moral turpitude is relevant to truthfulness (*People v. Wheeler* (1992) 4 Cal.4th 284, 295) and defendant conceded the Washington conviction was a crime of moral turpitude. In addition, the trial court exercised its discretion to limit exhibit 69 to two pages which disclosed limited information about the prior conviction. The information shown on exhibit 69 is not inflammatory when compared to the facts of the instant case. The trial court instructed the jury to decide the facts based only on the evidence presented at trial and not to let bias or prejudice affect how it assessed the credibility of a witness, the evidence and its decision. Admission of exhibit 69 did not consume an undue amount of time or create a substantial danger of undue prejudice or confusion of issues.

III

Defendant further contends the trial court should have instructed with CALCRIM No. 224 on the use of circumstantial evidence.

10

At the time of trial, CALCRIM No. 224 provided: "Before you may rely on circumstantial evidence to conclude that a fact necessary to find the defendant guilty has been proved, you must be convinced that the People have proved each fact essential to that conclusion beyond a reasonable doubt. [¶] Also, before you may rely on circumstantial evidence to find the defendant guilty, you must be convinced that the only reasonable conclusion supported by the circumstantial evidence is that the defendant is guilty. If you can draw two or more reasonable conclusions from the circumstantial evidence, and one of those reasonable conclusions points to innocence and another to guilt, you must accept the one that points to innocence. However, when considering circumstantial evidence, you must accept only reasonable conclusions and reject any that are unreasonable."

The trial court did not give the CALCRIM No. 224 instruction. Instead, it instructed the jury with CALCRIM No. 704 as follows: "Before you may rely on circumstantial evidence to conclude that a special circumstance allegation is true, you must be convinced that the People have proved each fact essential to that conclusion beyond a reasonable doubt. Also, before you may rely on circumstantial evidence to find that a special circumstance allegation is true, you must be convinced that the only reasonable conclusion supported by the circumstantial evidence is that the special circumstance allegation is true. [¶] If you can draw two or more reasonable conclusions from the circumstantial evidence, and one of those reasonable conclusions supports a finding that the special circumstance allegation is true and another reasonable conclusion supports a finding that it is not true, you must conclude that the allegation was not proved by the circumstantial evidence. However, when considering circumstantial evidence, you must accept only reasonable conclusions and reject any that are unreasonable."
The trial court also instructed the jury with CALCRIM No. 705, which provides a similar instruction with regard to the use of circumstantial evidence to prove a special circumstance with an intent or mental state requirement.

11

A trial court must instruct sua sponte on the effect to be given circumstantial evidence when such evidence is substantially relied upon for proof of guilt. (*People v. Sandoval* (2015) 62 Cal.4th 394, 417, 426 (*Sandoval*).) Here, the People's case about whether defendant stabbed Jilbert, set fire to her and his car, and possessed the requisite mental states was based on circumstantial evidence. Although CALCRIM Nos. 704 and 705 instructed the jury on the use of circumstantial evidence, they specifically referenced the use of that evidence for the special circumstance allegations. The trial court should have instructed with CALCRIM No. 224. (*Sandoval,* at pp. 417, 426.)

Error in failing to instruct with CALCRIM No. 224 is state law error that is prejudicial only where there is a reasonable probability of a more favorable result. (*Sandoval, supra*, 62 Cal.4th at pp. 421-422, 426; *People v. Rogers* (2006) 39 Cal.4th 826, 886-887.) No such prejudice appears.

The jury was instructed that in deciding the special circumstance allegations it had to determine whether defendant (1) personally and intentionally used a deadly weapon to stab Jilbert; (2) intended to kill her; (3) intended to inflict extreme physical pain and suffering on her while she was still alive; (4) intended to inflict such pain and suffering for a sadistic purpose; and (5) did an act involving the infliction of extreme physical pain and suffering on her. The prosecutor argued the personal use of a deadly weapon special circumstance allegation was based on defendant stabbing Jilbert with a knife. He said the torture special circumstance allegation was based on defendant setting fire to Jilbert while she was still alive. The trial court instructed the jury on how to use circumstantial evidence to make the special circumstance findings. The jury was, therefore, instructed on how to use circumstantial evidence in determining whether defendant personally and intentionally stabbed Jilbert and set her on fire and whether he acted with express malice, findings it also had to make in deciding the first degree murder and arson counts. Whether the stabbing and fire caused Jilbert's death or great bodily injury was proved by

12

direct, not circumstantial, evidence. There is no reasonable probability the jury would have returned a more favorable verdict had it been instructed with CALCRIM No. 224.

IV

In addition, defendant argues the trial court erred in finding that his Washington state first degree manslaughter conviction was a prior strike conviction. The Attorney General counters that the trial court did not sentence defendant based on a prior strike conviction. We agree. Because defendant does not show he was sentenced based on a prior strike conviction, we do not consider this appellate claim.

Although the abstract of judgment indicates that defendant was sentenced under the three strikes law (§§ 667, subds. (b)-(i), 1170.12), the supplement to the sentencing minutes signed by the sentencing judge does not have the equivalent box checked.[3] The probation officer's report does not mention the three strikes law and the prosecutor, defense counsel, and trial court did not mention it or a prior strike. The trial court imposed the sentences provided in the charged statutes without, for example, doubling the determinate terms as may be required under the three strikes law. (§§ 190.2, subd. (a)(18) [count I], 451, subd. (a) [count II], 69, 422, subd. (a) [counts III and IV], 667, subd. (e), 1170.12, subd (c)(1).) There is no indication the trial court imposed any consecutive sentence pursuant to the three strikes law. (§§ 667, subd. (c)(6), (c)(7), 1170.12, subd. (a)(6), (a)(7).) Instead, the sentencing court followed the probation officer's report recommendation and considered the factors affecting concurrent or consecutive sentencing in California Rules of Court, rule 4.425.

V

Defendant contends that amendments to section 1170 made by Senate Bill No. 567 require that he be resentenced.

---

[3] On remand, the trial court can correct the abstract of judgment in this regard.

Senate Bill No. 567 changed the requirements for using aggravating circumstances and altered sentencing discretion under section 1170, effective January 1, 2022. (Stats. 2021, ch. 731.) Among other things, Senate Bill No. 567 amended section 1170 to prohibit upper term sentencing unless factors in aggravation are stipulated to by the defendant, proven to a factfinder beyond a reasonable doubt, or established by a certified record of conviction. (§ 1170, subd. (b)(2), (3).)

The parties agree, as do we, that the change in the law is ameliorative and applies retroactively to defendant's case. (*People v. Zabelle* (2022) 80 Cal.App.5th 1098, 1108-1109; *People v. Jones* (2022) 79 Cal.App.5th 37, 45; *People v. Flores* (2022) 73 Cal.App.5th 1032, 1039.)

The trial court imposed upper term sentences on counts II, III and IV after referencing defendant's criminal record, that he was on parole at the time of the offenses, and that the offenses were particularly heinous. The probation officer's report did not identify any mitigating circumstances and the trial court did not find any.

Defendant argues the trial court relied on aggravating factors that were not established in a manner consistent with current law. The Attorney General counters that any error is harmless because we can conclude, beyond a reasonable doubt, that the jury, applying the beyond-a-reasonable-doubt standard, unquestionably would have found true the aggravating factors had the issue been submitted to the jury.

The trial court may consider defendant's criminal record based on a certified record of conviction. (§ 1170, subd. (b)(3).) But except for the Washington state conviction, there was no certified record of conviction for the prior convictions listed in the probation officer's report. The record also does not show that defendant stipulated to any aggravating factor or that such factors were proven to a trier of fact beyond a reasonable doubt. Because the aggravating factors were not established in a manner consistent with Senate Bill No. 567 and the trial court did not have the benefit of the

14

amendments to section 1170, we decline to conclude on this record that the state law error was harmless. We will remand the matter for resentencing.

## DISPOSITION

Defendant's sentences on counts II, III and IV are vacated and the matter is remanded to the trial court for resentencing on those counts consistent with current law. The judgment is otherwise affirmed. Following resentencing, the trial court shall send an amended abstract of judgment, as appropriate, to the Department of Corrections and Rehabilitation.


/S/
MAURO, J.


We concur:


/S/
HULL, Acting P. J.


/S/
RENNER, J.

15